**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

PATRICK MCARDLE, COURTNEY
RAMSEY, and
ANTHONY CUMMINGS,
on behalf of themselves and
all others similarly situated,

        Plaintiffs,

    v.                           Case No.: 5:19-cv-461-Oc-30PRL

CITY OF OCALA, FLA.,

        Defendant.
_____/

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
<u>MEMORANDUM OF LAW AND EVIDENCE IN SUPPORT</u>**

      Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), Plaintiffs move this Court for an order certifying this case as a class action. As grounds therefor, Plaintiffs state:

      1.    Named Plaintiffs Patrick McArdle, Courtney Ramsey, and Anthony Cummings bring this class action lawsuit alleging violations of the Eighth and Fourteenth Amendments of the U.S. Constitution and Article I, section 9 of the Florida Constitution on behalf of themselves and other similarly situated individuals experiencing homelessness in the City of Ocala.

      2.    Named Plaintiffs bring this lawsuit because they do not have access to fixed, regular, and adequate housing. Due to lack of adequate alternatives, Named Plaintiffs and hundreds of homeless individuals who are similarly situated have no

choice but to sleep or rest on streets or sidewalks, or in woods, parks or other outdoor areas in the City.

3.     Despite the lack of available and accessible shelter space, the City has a policy of "broken windows" policing that includes a "vagrant patrol" to actively identify and arrest homeless individuals for municipal ordinance violations such as "open lodging" with the intent of driving homeless people out of the City. This policy has included implementing police operations in 2018 and 2019 targeted at the homeless population including "Operation Street Sweeper," "Operation Innovation," and a "zero tolerance" action plan.

4.     The City also issues trespass warnings banning homeless individuals from returning to public places (such as public parks) even under circumstances when the individual committed no criminal violation. This has the impact of expelling homeless people from public places and infringes on their constitutionally protected liberty interest to be in public places of their choosing under times and conditions when those places are ordinarily available to members of the public.

5.     The proposed class represented by the Named Plaintiffs is defined as:

> All persons who currently or during the pendency of this litigation (a) are homeless in that they are without fixed housing and lack the financial resources to provide for their own housing; (b) live within the City of Ocala including individuals who sometimes sleep outside the City to avoid arrest; and (c) have been convicted under the City of Ocala ordinance, codified at Sec. 42-10 of the Ocala City Code, that prohibits "lodging in the open" ("open lodging").

6.     **Numerosity:** The proposed class is so numerous that joinder of all its members is impracticable. Data from 2015-2019 show that there are 260 people who

have been convicted under the City's open lodging ordinance, and have been subjected to the City's unlawful policies, practices and customs because they are homeless in that they are without fixed regular and adequate residence and do not have access to year-round shelter.

7.      **Commonality:** The questions of law or fact that are common to the Named Plaintiffs and proposed class members include whether:

a.   Named Plaintiffs and class members experiencing homelessness are involuntarily unsheltered in that the number of available shelter beds is exceeded by the number of homeless people in the City of Ocala;

b.   Defendant's policies, practices, and customs of enforcing the City's "open lodging" ordinance resulting in criminal punishment (incarceration and imposition of fines, fees, and costs) of class members for sleeping or resting while awake on property in City (public or private), when there is no available alternative shelter, is cruel or unusual punishment in violation of the Eighth Amendment, U.S. Constitution;

c.   Defendant's "open lodging" ordinance and the manner in which it is being applied to Named Plaintiffs and class members fails to provide constitutionally sufficient notice prior to depriving class members of their liberty interests in resting, sleeping, and seeking shelter from the elements, such that a reasonable homeless person in Ocala would understand what conduct is prohibited in violation of the vagueness doctrine under the due process clause of the Fourteenth Amendment to the U.S. Constitution;

d.   Defendant's "open lodging" ordinance and the manner in which it is being applied authorizes and constitutes arbitrary and discriminatory enforcement by casting a wide net of virtually limitless innocent human behavior that is criminalized and leaving it up to the whim of individual police officers to determine who to criminally punish and who to set free in violation of the vagueness doctrine under the due process clause of the Fourteenth Amendment to the U.S. Constitution;

e.   Defendant's "open lodging" ordinance authorizes criminal punishment of Named Plaintiffs and class members experiencing homelessness in the form of incarceration and imposition of fines, fees, and costs for sleeping or resting while awake because they are homeless in violation of the substantive due process clause of the Fourteenth Amendment to the U.S. Constitution;

f.   Defendant's policies, practices and customs of issuing trespass warnings to exclude Named Plaintiffs and class members from being physically present in public parks or other public places generally open to the public deprives them of a constitutionally protected liberty interest to be in public places of their choosing without an opportunity for a hearing violates their right to procedural due process under the Fourteenth Amendment of the U.S. Constitution;

g.   Defendant's policies, practices and customs of using "broken windows" policing and the manner in which it is being applied to Named Plaintiffs and class members who are experiencing homelessness (through police operations

like "Operation Street Sweeper", "zero tolerance" action plans, and enforcement of the City's "open lodging" and trespass policies) is motivated by a discriminatory intent to harm and punish a politically unpopular group and lacks a rational basis in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

h.    Defendant's "open lodging" ordinance discriminates on its face and as-applied against Named Plaintiffs and class members by punishing only homeless individuals who have no alternative places to sleep or rest while allowing others to engage in the same conduct if they have access to housing and an ability to conform their conduct in violation of the Equal Protection Clause to the Fourteenth Amendment of the U.S. Constitution;

i.    Defendant's policies, practices and customs of using "broken windows" policing and the manner in which it is being applied to Named Plaintiffs and class members who are experiencing homelessness (through police operations like "Operation Street Sweeper," "zero tolerance" action plans, and enforcement of the City's "open lodging" and trespass policies) violate their fundamental right to freedom of movement and intrastate travel guaranteed by Article I, section 9 of the Florida Constitution by: preventing homeless people from coming into the City; expelling those already present from the City; and impeding their ability to move freely and engage in harmless, life-sustaining activities such as resting, sleeping, and attempting to protect themselves from the elements.

8.     **Typicality:** The claims of the Named Plaintiffs are typical of the claims of the class as a whole in that the Named Plaintiffs and proposed class members are all homeless in that they are without fixed regular and adequate housing and lack the financial resources to provide for their own housing. They all live within the City of Ocala. Their experiences of arrest, punishment, and exclusion from public places are typical due to their status as homeless persons who must sleep, rest while awake, and otherwise be physically present in public places that are open to members of the public generally.

9.     **Adequate representation:** The Named Plaintiffs will fairly represent and adequately protect the interests of the proposed class as a whole. The Named Plaintiffs understand their responsibilities as class representatives and are willing to take active roles in prosecuting this litigation. The Named Plaintiffs do not have any interests antagonistic to those of other proposed class members. By filing this action, the Named Plaintiffs have displayed an interest in vindicating their rights, as well as the claims of others who are similarly situated. The relief sought by the Named Plaintiffs will inure to the benefit of the proposed class generally. The Named Plaintiffs are represented by counsel who are skilled and knowledgeable about civil rights litigation, homeless advocacy, constitutional law, practice and procedure in the federal courts, and the prosecution and management of class action litigation.

10.     The City has acted on grounds generally applicable to the proposed class, thereby making final injunctive relief appropriate with respect to the class as a whole under Fed. R. Civ. P. 23(b)(2). The relief sought here — an injunction prohibiting

the City from enforcing its unconstitutional open lodging ordinance and its policy of issuing trespass warnings to exclude class members from public places — would resolve the controversy for hundreds of similarly situated individuals. A class action is superior to individual lawsuits for resolving this controversy.

**WHEREFORE**, Plaintiffs respectfully request that this Court certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2), and appoint class counsel.

## MEMORANDUM IN SUPPORT

Class certification requires that the putative class meet the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequate representation, and the two Rule 23(b)(2) requirements that the Defendant "acted or refused to act on grounds equally applicable to the class," and that final relief of an injunctive nature or corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate.  Fed. R. Civ. P. 23.

A party seeking class certification must "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original).  While the Plaintiffs bear the burden of showing that the requirements of Rule 23 have been met, "[f]or the purposes of class certification ... the Court accepts the Plaintiffs' substantive allegations as true."  *In Re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229, 232 (M.D. Fla. 1993).  In addition, "[t]he Court resolves any doubt in favor of class certification."  *Id.; see also Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  Although the

Rule 23 analysis will frequently "entail some overlap with the merits of the plaintiff's underlying claim," 131 S. Ct. at 2551, "the question is not whether ... plaintiffs have stated a cause of action or will prevail on the merits but rather whether the requirements of Rule 23 are met." *Eisen v. Carlyle & Jacquelin,* 417 U.S. 156, 178 (1974) (citation omitted). *See also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") (internal citations omitted).

### A.    Class Definition

The proposed class consists of:

> All persons who currently or during the pendency of this litigation (a) are homeless in that they are without fixed housing and lack the financial resources to provide for their own housing; (b) live within the City of Ocala including individuals who sometimes sleep outside the City to avoid arrest; and (c) have been convicted under the City of Ocala ordinance, codified at Sec. 42-10 of the Ocala City Code, that prohibits "lodging in the open" ("open lodging").

While the Eleventh Circuit has held that in order to obtain certification in Fed. R. Civ. P. 23(b)(3) cases a class must be sufficiently definable and ascertainable, *see Carriulo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016), this judicially-created requirement of ascertainability has only been applied in the context of a Rule 23(b)(3) damages class. *Braggs v. Dunn*, 137 F.R.D. 634, 671 (M.D. Ala. 2016) ("Defendants have not cited, and the court is not aware, of any cases within this circuit applying the ascertainability requirement to a Rule 23(b)(2) class, much less any

binding precedent doing so."). Those circuits that have addressed this issue have concluded that ascertainability is not a prerequisite for a 23(b)(2) class. *Id.*; *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015). Because of the absence of procedural safeguards such as notice and the indivisible nature of the remedy in a suit for declaratory and injunctive relief, a Rule 23(b)(2) class definition need not be as precise as that of a 23(b)(3) class. *See Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972). Even if, however, the ascertainability factor does apply, Plaintiff's class definition is ascertainable. A class is "identifiable" when "its members can be ascertained by reference to objective criteria." *Bussey v. Macon Co. Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014). The proposed class is ascertainable as the members are all homeless individuals who live in Ocala and have been convicted under the City's open lodging ordinance.

Future class members also may be included. *See, e.g. Armstead v. Coler*, 914 F.2d 1464, 1465 (11th Cir. 1990) (class included current and future residents of mental health institution). In this case, the class may be fluid as proposed class members will continue to be arrested, cited, and convicted under the ordinance during the pendency of this litigation.

### B.    Numerosity

Rule 23 requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Plaintiffs need not know the exact number in the putative class, but they must "proffer some evidence of the number in the purported class or a reasonable estimate." *Leszcynski v. Allianz Ins.*, 176 F.R.D. 659,

669 (S.D. Fla. 1997).  The court may then make a "common sense assumption in order to find support for numerosity." *Evans v. U.S. Pipe & Foundry*, 696 F. 2d 925, 930 (11th Cir. 1983).  In this Circuit, "generally less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986). Other factors that the Court should consider include the geographical dispersion of the putative class members, judicial economy, and the ease of identifying the members of the putative class and their addresses.  *See Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 598-99 (S. D. Fla. 1991).

Further, reasonable inferences about homelessness may be made. *See Pottinger v. City of Miami*, 720 F. Supp. 955, 958 (S.D. Fla. 1989) (numerosity met based upon a reasonable inference of the studies conducted of the homeless population and the nature of homelessness). On January 24, 2019, there were 475 unduplicated homeless individuals in Marion County of which 170 were in an emergency shelter, 126 in a transitional shelter, and 179 were unsheltered. (Ex. 1 ¶ 9, Decl. of Juaristic.) There is not enough emergency shelter or other housing assistance to provide shelter to all individuals who need it in Marion County or the City of Ocala.  (*Id.* ¶15.)

From 2015-2019, there have been 260 people who have been convicted of or received a withheld adjudication for the charge of open lodging. (Ex. 2.)  Thus, the putative class is so numerous that joinder of all the members is impracticable. *See Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (numerosity

satisfied with "at least thirty-one individual class members"); *Haymons v. Williams*, 795 F. Supp. 1511 (M.D. Fla. 1982) (certifying class of 178 Medicaid-eligible individuals residing in adult congregate living).

Joinder of the putative class members also is impracticable because of class members' limited economic resources, housing instability, and capacity to file their own litigation. *See Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (class included future members and applicants from a wide geographical area); *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986) (court considered ability of individual plaintiffs to bring separate action if class certification denied, concluding that "plaintiffs' confinement, their economic resources, and their mental handicaps, it is highly unlikely that separate actions would follow if class treatment were denied. This is precisely the type of group which class treatment was designed to protect."). Further, there is judicial economy in rendering a classwide decision on the requested injunctive and declaratory relief. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998).

In sum, there are hundreds of individuals in the putative class and all relevant factors support a finding of numerosity.

### C.    Commonality

Rule 23 also requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  As the Supreme Court explained, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury'" and whether there is "capacity of a classwide proceeding to generate common

answers." *Wal-Mart Stores,* 131 S. Ct. at 2551, citing *General Tel. Co. of Sw. v. Falcon*, 102 S. Ct. 2364, 2370 (1982).  Allegations of a "policy" or "practice" of treating the entire class unlawfully generally satisfy the commonality requirement.  *Int'l Bd. of Teamsters v. U.S.*, 431 U.S. 324, 336 (1977) (finding commonality where racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice); *see also Cooper v. Fed. Reserve*, 467 U.S. 867, 878 (1984); *Cox*, 784 F.2d at 1557-58.  Where a common scheme is alleged, common questions of law or fact will exist.  *See Murray v. Auslander*, 244 F.3d 807, 813 (11th Cir. 2001) (class certified to challenge State's policy of "capping" the per person amount under Florida's Medicaid Waiver for Developmental Disabilities).

In certifying a class of homeless persons, Judge Atkins stated:

> The status of the plaintiffs as homeless is a fact common to the class. As homeless, they allege that they have been and will continue to be arrested solely for conduct that is fundamental to the maintenance of life. This single factual issue is sufficient to sustain class certification. It is irrelevant that those members arrested are charged with a variety of crimes such as loitering, trespassing, being in the park after hours, and vagrancy as long as the common factual circumstances of their homelessness subjects them to such arrest.

*Pottinger v. City of Miami,* 720 F. Supp. 955, 958 (S.D. Fla. 1989) (citations omitted).

In this case, the Named Plaintiffs and putative class are all homeless individuals who have been convicted under Ocala's open lodging ordinance. As set forth above in paragraph seven of the motion, Plaintiffs have identified nine common questions of fact and law for all putative class members. The answers to these questions raise systemic issues applicable to the Defendants' treatment of all class

12

members. All class members have been injured by the Defendant's enforcement of the unconstitutional ordinance. These common issues satisfy commonality.

Further, liability is based on a common theory, and will not require individual determinations. *See Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) (no commonality because determination of reasonableness of officer's actions in light of essentially unique factual circumstances accompanying the arrest cannot be made en masse). Although the specific circumstances here of the arrests of class members vary, plaintiffs are not challenging the legality of individual arrests. They challenge the same unconstitutional system and share a common desire to enjoin the enforcement of the City's open lodging ordinance.

### D.    Typicality

Rule 23 requires that the claims or defenses of the representative parties be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). The Eleventh Circuit has stated that typicality exists when there is a:

> nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

*Kornberg v. Carnival Cruise Lines*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also*
*Piazza v. Ebsco Indus. Inc.*, 273 F.3d 1341, 1351 (11th Cir. 2001); *Prado-Steiman v.*
*Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000).

The United States Supreme Court held that the class representative has to
"possess the same interest and suffer the same injury as the class members." *Falcon*,
102 S. Ct. at 2370. The typicality requirement centers on "whether the class
representative's claims have the same essential characteristics as those of the
putative class. If the claims arise from a similar course of conduct and share the same
legal theory, factual differences will not defeat typicality." *Stirman v. Exxon Corp.*, 280
F.3d 554, 562 (5th Cir. 2002) (citations omitted). The Named Plaintiffs here meet this
requirement.

Plaintiffs claim that by enforcing the City's open lodging ordinance that
Defendants are violating the federal and Florida Constitutions. The putative class
consists of individuals who are homeless and have been subjected to Ocala's open
lodging ordinance. The Named Plaintiffs have suffered the same constitutional injuries
as the class and "seek to represent class members who have suffered and will suffer
the same arrests." *See Pottinger*, 720 F. Supp. at 959.

Named Plaintiff Cummings has not had permanent housing since 2014, and
cannot afford a place to live. (Ex. 3 ¶¶ 4 & 6.) He has been convicted three times for
violating Ocala's open lodging ordinance, trespassed from a public park once, and
convicted of trespass for being in the park. (*Id.* ¶¶ 8-10.) In order to sleep or rest, he
looks for places that are out of sight or outside the city limits. (*Id.* ¶ 14.)

14

Named Plaintiff McArdle has not had permanent housing since 2012, and cannot afford a place to live. (Ex. 4 ¶¶ 4-5.) He has been convicted ten times for violating Ocala's open lodging ordinance since 2016, trespassed from the Salvation Army shelter, a public park, and the downtown square, and convicted of trespass for being in the park. (*Id.* ¶¶ 8, 9 & 11.) In order to sleep or rest, he tries to find a place inside, but if he cannot he sleeps in the woods, public sidewalks or other public places. (*Id.* ¶ 3.)

Named Plaintiff Ramsey has lived in Ocala for most of her life. She has not had permanent housing since 2018. (Ex. 5 ¶¶ 1-3.) She has been convicted six times for violating Ocala's open lodging ordinance since 2018, and trespassed from the Salvation Army shelter, a public park, and the downtown square. In order to sleep or rest, she tries to find a place inside either in a shelter or with friends, but if she cannot she sleeps in the woods, public sidewalks, or other public places. (Ex. 5.)

As with commonality, the incidental variations in Plaintiffs' factual situations do not defeat typicality because the basic nature of the injury and the legal theory of recovery is typical for the entire class. *See Miles v. Metropol. Dade Cnty.*, 916 F.2d 1528, 1534 (11th Cir. 1990); *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 123 (3d Cir. 1985) (typicality satisfied despite fact that "in a number of areas the class representatives' specific allegations are distinct from those of the class as a whole"), *aff'd on other grounds*, 482 U.S. 656 (1987); *Edmonds v. Levine,* 233 F.R.D. 638, 641 (S.D. Fla. 2006) (differences in medical conditions and prescriptions were "irrelevant for purposes of the typicality requirement" because the action of Medicaid agency to

15

deny the service and the underlying rationale for the denial were identical for each named plaintiff to those of each proposed class member).  Factual variations will not normally preclude class certification under the typicality requirement if the individual and class claims arise from the same event or course of conduct, and gives rise to the same legal or remedial theory. *See Postawko v. Missouri Dep't. of Corrections*, 910 F.3d 1030 (6th Cir. 2018). *See also Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985), *abrogated on other grounds by Green v. Mansour*, 474 U.S. 64 (1985) ("strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences"). In *Appleyard,* the court focused on the similarity of relief, stating that all class members were similarly interested in the requested relief, that the court "declare the policies and customs of the Defendant invalid" and enjoin the Defendant from further failing to comply with applicable federal law.  *Id.* at 958.

Similarly, in the present case, the Named Plaintiffs and the putative class have all been subjected to the same ordinance and policy, thus suffering the same constitutional deprivation, and are requesting the same declaratory and injunctive relief. *See Kincaid v. City of Fresno*, 244 F.R.D. 597, 603 (E.D. Cal. 2007) (typicality met where "each named Plaintiff and every member of the proposed class allege that they have suffered the deprivation of his or her personal property as a result of this policy and by virtue of their status as living in the streets"). There are no unique defenses to the Named Plaintiffs' claims. The Named Plaintiffs' claims are therefore typical of the claims of the putative class.

**E.     Adequacy of Representation**

Rule 23 requires that the class representatives be persons who "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if the Named Plaintiffs will adequately represent a potential class pursuant to the requirements of Rule 23(a)(4), the Court should consider (1) "whether Plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation and ... (2) whether Plaintiffs have interests antagonistic to those of the rest of the class." *Kirkpatrick v. Bradford &* Co., 827 F. 2d 718, 726 (11th Cir. 1987) (*quoting Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir. 1985). Each concern is satisfied here.

The Named Plaintiffs have no interests that are potentially antagonistic to the putative class in seeking the challenged ordinances and policies to be declared unconstitutional. There is no sense in which Named Plaintiffs' interests can be said to conflict with the interests of other members of the putative class. *See Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001) (differences between named plaintiffs and class members render named plaintiffs inadequate only when those differences create conflicts). They all want the same relief. There are no claims for individual monetary damages; the claims are for declaratory and injunctive relief common to the entire putative class. The common allegations of Defendants' practices, the nature of the relief sought, and the legal theories advanced demonstrate the required congruity of interests. Moreover, each Named Plaintiff understands that the goal of the lawsuit is "to stop [the City] from doing things to other people that they

have done to me – arresting us for sleeping outside when we have no other choice and issuing trespass warnings for public parks." (Ex. 3 ¶ 15; Ex. 4 ¶ 14; Ex. 5 ¶ 13.) The Named Plaintiffs are willing and able to participate in the lawsuit in order to help others. (Ex. 3 ¶¶ 15-18; Ex. 4 ¶¶ 13-15; Ex. 5 ¶ 14.)

Fed. R. Civ. P. 23(g)(1)(A) lists the factors that courts must consider in appointing class counsel. *See Sheinberg v. Sorenson*, 606 F.3d 130 (3d Cir. 2010). They include pre-filing investigation, experience in class actions or similar claims, knowledge of law, and resources that counsel will commit to representing the class. These requirements are satisfied. The Named Plaintiffs have obtained experienced counsel who are skilled and knowledgeable about civil rights litigation with particular focus on homeless advocacy, constitutional law, practice and procedure in the federal courts and the prosecution and management of class action litigation. Plaintiffs are represented by non-profit organizations Southern Legal Counsel and the ACLU Foundation of Florida, and private attorney Andrew Pozzuto, who will commit sufficient resources to adequately prosecute the case.

Lead counsel Kirsten Anderson has been a member of the Florida Bar since 2005 and a lawyer with Southern Legal Counsel (SLC) since 2007. Anderson is an experienced federal court litigator (trial and appellate) including extensive experience bringing 42 U.S.C. § 1983 cases on behalf of homeless individuals against governmental entities for deprivations of constitutional rights. She has also provided national trainings and published on this topic. Her resume is attached. (Ex. 6.)

Co-counsel Jodi Siegel has been a lawyer with SLC since 1985 when she was admitted to The Florida Bar. Siegel is an experienced federal court litigator (trial and appellate) and has extensive class action experience. Siegel and Anderson were class counsel in *Moreland, et al. v. Palmer*, Case No. 4:12-cv-00585-MW-CAS (N.D. Fla.) (denial of due process in reduction of benefits to Medicaid beneficiaries). Siegel was class counsel in *Long, et al. v. Benson, et al.,* Case No. 4:08-cv-26-RH-WCS (N.D. Fla.) (unnecessary institutionalization of individuals with disabilities in nursing facilities) and *Washington, et al. v. DeBeaugrine, et al.*, 658 F. Supp. 2d 1332 (N.D. Fla. 2009), Case No. 4:09cv189-RH/WCS (denial of due process to Medicaid beneficiaries). Her resume is attached. (Ex. 7.)

Co-counsel Chelsea Dunn, also with SLC, has been a member of The Florida Bar since 2018 and has been a licensed attorney in other states since 2009. At SLC, she litigates complex federal court cases. Prior to joining Southern Legal Counsel, she was a judicial clerk for the Supreme Court of Virginia and worked in the Children and Family Division representing indigent parents and children. (Ex. 8.)

Co-counsel Daniel Tilley has been an attorney with the American Civil Liberties Union of Florida (ACLU-FL) since 2012 and a member of The Florida Bar since 2012. He has been admitted to practice law in other states since 2010. Tilley has more than three years of federal judicial clerk experience and more than seven years of civil rights litigation experience with the ACLU, most of it concerning complex constitutional or statutory claims. (Ex. 9.)

Co-counsel Jacqueline Azis has been an attorney with the ACLU-FL since 2017 and a member of The Florida Bar since 2012. She has served as counsel in numerous federal court cases including cases under 42 U.S.C. § 1983 on behalf of homeless individuals against governmental entities for deprivations of constitutional rights. *Food Not Bombs v. City of Pensacola*, Case No. 3:17-cv-345-MCR-CJK (N.D. Fla.) (challenging a panhandling ordinance under First Amendment); *Anthony Stone, et. al. v. City of Fort Lauderdale*, Case No. 0:17-cv-61211-WPD (S.D. Fla.) (challenging the City's destruction of property under Fourth and Fourteenth Amendments). She has also represented hundreds of individuals in state criminal proceedings including during her time working at the Office of the Public Defender in Ocala, Florida. (Ex.10.)

Co-counsel Andrew Pozzuto has been a member of The Florida Bar since 1991. He is an experienced criminal court practitioner in private practice in Ocala, Florida where he has worked since his first legal job at the Office of the Public Defender. He has completed more than 75 criminal jury trials. (Ex. 11.)

**F.    Defendant has acted or refused to act on grounds generally applicable to the putative class making final injunctive and declaratory relief appropriate for the putative class as a whole.**

Certification under Rule 23(b)(2) requires finding that the defendant "acted or refused to act on grounds equally applicable to the class" and "final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole" is appropriate. Rule 23(b)(2) was intended primarily to facilitate civil rights class actions, where, as here, "the class representatives typically seek broad injunctive or declaratory relief against

Defendant's discriminatory practices." *Penson v. Terminal Transport Co., Inc.*, 634 F.2d 989, 993 (5th Cir. Unit B 1981); *see also Ass'n for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 465 (S.D. Fla. 2002) (certifying class of persons with disabilities alleging failure to meet accessibility requirements under Americans With Disabilities Act).

In *Wal-Mart Stores*, the Court held that Rule 23(b)(2) is only satisfied when "a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." 131 S. Ct. at 2557.

The central focus of this litigation is on Defendant's enforcement of an unconstitutional ordinance. The Named Plaintiffs and the proposed class are subject to the continuing injury of being arrested, cited and trespassed. Injunctive or declaratory relief settling the legality of Defendants' behavior with respect to the putative class as a whole is appropriate.

Class actions pursuant to Fed. R. Civ. P. 23(b)(2) are appropriate where the Plaintiff class seeks declaratory or injunctive relief from unlawful and/or discriminatory policies and local government ordinances. *See Blake v. City of Grants Pass*, No. 1:18-CV-01823-CL, 2019 WL 3717800, at *6 (D. Or. Aug. 7, 2019) ("Each member of the proposed class is at risk of having the challenged ordinances enforced against him or her. Thus, Defendant's alleged conduct—punishing homeless individuals for engaging in activities necessary to sustain life—applies equally to all class members."). The

Named Plaintiffs and putative class seek injunctive relief as a whole against the City, and not particularized relief for each class member. Thus, Plaintiffs meet the standard for certification under Rule 23(b(2).

### G.    Conclusion

Plaintiffs have met the requirements of Rule 23(a) and (b)(2) by showing that they are capable of proving their claims through common evidence. *See S.R. v. Pa. Dep't of Human Servs.*, 325 F.R.D. 103, 112 (M.D. Pa. 2018) (class certified where evidence needed to prove the systemic failures and discriminatory impact of state agency's practices will be substantially the same for all putative class members). Plaintiffs request that the class be certified, and that the Court appoint class counsel.


Dated: December 18, 2019                    Respectfully submitted,

                                            */s/ Jodi Siegel*
                                            Jodi Siegel, Fla. Bar No. 511617
                                            jodi.siegel@southernlegal.org
                                            Kirsten Anderson, Fla. Bar No. 17179
                                            TRIAL COUNSEL
                                            Kirsten.anderson@southernlegal.org
                                            Chelsea Dunn, Fla. Bar No. 1013541
                                            chelsea.dunn@southernlegal.org
                                            Southern Legal Counsel, Inc.
                                            1229 NW 12th Avenue
                                            Gainesville, FL 32601-4113
                                            (352) 271-8890
                                            Fax: (352) 271-8347

                                            Jacqueline Nicole Azis, Fla. Bar No.101057
                                            ACLU Foundation of Florida
                                            4023 N. Armenia, Suite 450
                                            Tampa, FL 33607
                                            (786) 363-2708

Fax: (786) 363-2708
jazis@aclufl.org

Daniel Tilley, Fla. Bar No. 102882
ACLU Foundation of Florida
4343 W. Flagler St., Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org

Andrew Pozzuto, Fla. Bar No. 887617
Alavi & Pozzuto
108 N Magnolia Ave Ste 600
Ocala, FL 34475-6648
352-732-9191
Fax: 352-732-4892
apozzuto@theaplawgroup.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic notice generated through the CM/ECF service on <u>December 18, 2019</u>, on all counsel or parties of record.

*/s/ Jodi Siegel*
**ATTORNEYS FOR PLAINTIFFS**