# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

PATRICK MCARDLE, COURTNEY
RAMSEY and ANTHONY CUMMINGS,

    Plaintiffs,

v.                                        Case No: 5:19-cv-461-Oc-30PRL

CITY OF OCALA, FL,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon the City of Ocala's *Daubert* Motion (Dkt. 70), Plaintiffs' *Daubert* Motion (Dkt. 106), the City of Ocala's Dispositive Motion for Final Summary Judgment (Dkt. 107), and Plaintiffs' Motion for Summary Judgment (Dkt. 108). The Court, having reviewed the motions, responses, and record evidence, and being otherwise advised in the premises, grants in part and denies in part Plaintiffs' motion for summary judgment and denies Defendant's motion for summary judgment. The Court also denies as moot the parties' *Daubert* motions.

## BACKGROUND & RELEVANT FACTS

Plaintiffs Patrick McArdle, Courtney Ramsey, and Anthony Cummings filed this lawsuit against the City of Ocala ("Defendant" or "the City") alleging violations of the Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 9 of the Florida Constitution. Plaintiffs claim that the City's policies, including the open lodging ordinance under Section 42-10 of the City's Code and the trespass policy,

unlawfully target the City's homeless population. Plaintiffs sought to certify a class of homeless individuals who had been prosecuted under the open lodging ordinance. The Court denied class certification, leaving Plaintiffs' individual claims. (Dkt. 98).

The City's open lodging ordinance, codified at City Code § 42-10, provides as follows:

> **Sec. 42-10. - Trespass and unlawful lodging.**
>
> (a) *Definitions.*
>
>> (1) *"Lodge"* means to rest while awake or sleep on property described in subsection (b) of this section when one is:
>>
>>> a. Inside, on, or near a tent or sleeping bag, or asleep atop or covered by materials (i.e., bedroll, cardboard, newspapers) or inside some form of temporary shelter; and/or
>>>
>>> b. Near a campfire he or she has built; and/or
>>>
>>> c. When awakened relates that he or she is otherwise homeless.
>>
>> (2) *"Person without authority"* means one who has not received authorization, license, or invitation by any owner or lessee, or his or her agent.
>
> (b) *Prohibitions.*
>
>> (1) It shall be unlawful for any person without authority to trespass upon, enter, or remain in any church building or other public building, swimming pool, or enclosure surrounding any swimming pool, public building or athletic field in the city, except during the hours and at such times when such premises or building may be lawfully open for use by the public.
>>
>> (2) It shall be unlawful for any person at any time to lodge in the open on private property, in vacant lots, in or under any bridge or structure, in any railroad car, without owning the same or without permission of the owner or person entitled to possession of same.
>>
>> (3) It shall be unlawful for any person at any time to lodge in the open on public property, to include, but not limited to, government

2

> buildings, parks, sidewalks, public benches or government owned right-of-way.
>
> (c) *Evidence.* Merely sleeping in a place listed in subsection (b) of this section shall not be enough for a citation or arrest under this section. There must be one or more indicia of lodging, including but not limited to those listed in subsection (a)(1).

§ 42-10, Ocala City Code.

The ordinance prohibits a person from resting on both public and private property if there is one or more indicia of lodging, unless the person has authorization to lodge there. Merely sleeping in the open on public or private property is not sufficient for an arrest. The primary issue in this case is subsection c of 42-10(a)(1), which permits an officer to make an arrest for violating the ordinance if a person when awoken "relates that he or she is otherwise homeless." Plaintiffs have been arrested and convicted for violating the open lodging ordinance several times. From 2016 to 2019, McArdle was arrested 10 times for violating the ordinance. Ramsey was arrested 6 times for violating the ordinance in 2018 and Cummings was arrested twice for violating the ordinance in 2016. On some of those occasions, Plaintiffs were arrested for sleeping outdoors and, upon being awoken, advised that they were homeless.

There is a minimum of 150 homeless persons on any given night who sleep in unsheltered locations across Ocala and Marion counties. There are 65 emergency shelter beds for single adults in two emergency shelters: (1) Salvation Army (40 beds for men and 20 beds for women), and (2) Interfaith (5 beds for women). The shelters have eligibility criteria. Specifically, the Salvation Army's eligibility criteria include state identification, criminal background check, and sobriety requirements. Interfaith requires drug testing,

3

religious programing, and classes. In addition, the Salvation Army has restrictions on the duration of a person's stay. A person is permitted to stay 14 days per year, after which he or she is ineligible for admission for a year. It does, however, permit individuals to stay on cold or rainy nights, even though the admission criteria may not otherwise be satisfied.

There is no requirement in Section 42-10 or in the Ocala Police Department's ("OPD") policies for police officers to ascertain whether there is available shelter space prior to arresting an individual for sleeping or resting while awake outdoors in violation of the ordinance. OPD does not contact the shelters to determine whether a homeless person would have access to those facilities prior to making an arrest. Officers routinely use their discretion when determining whether to make an arrest.

In addition to arresting individuals for violating the open lodging ordinance, OPD officers and the City's Recreation and Parks Department issue trespass warnings for individuals who violate sections 810.08 and 810.09, Florida Statutes. When a person receives a trespass warning, the person receives a written slip which indicates that they have been trespassed from the property. The written slips do not have an expiration date and remain in effect until it is rescinded. While the City claims that a violator can challenge a trespass warning and have it rescinded (i.e. contact the supervisor at the Recreation and Parks Department, the City Manager, or the City Mayor, appear at a City Council meeting, request a complaint form from OPD), the City does not have a procedure in place to challenge a trespass warning. More importantly, the actual trespass warning slip does not set forth if and how a person can challenge the warning.

Plaintiffs were issued trespass warnings from the Salvation Army. Plaintiffs were also issued trespass warnings for Tuscawilla Park. Ramsey and McArdle were also issued trespass warnings for the Downtown Square. Tuscawilla Park and Downtown Square are City-owned public parks that are open to the public. McArdle and Cummings have been arrested for trespass after warning for being in Tuscawilla Park. OPD officers and Park Rangers have discretion to decide whether to issue trespass warnings for City-owned parks.

## DISCUSSION

### I. Motions for Summary Judgment

Plaintiffs and Defendant filed cross-motions for summary judgment. Plaintiffs seek summary judgment on Count One (Eighth Amendment), Count Two (Fourteenth Amendment – Vagueness), and Count Four (Fourteenth Amendment – Procedural Due Process). Plaintiffs contend that full relief can be awarded on the remaining counts if the Court rules in their favor on Counts One, Two, and Four. Defendant seeks summary judgment on all counts. The Court will address each claim below.

**A. Legal Standard**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). [I]f factual issues are present, the Court must deny the motion and proceed to trial. *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

### B. Eighth Amendment (Count One)

In Count One, Plaintiffs claim that Defendant's open lodging ordinance constitutes cruel and unusual punishment because it punishes Plaintiffs' status of homelessness.

6

Plaintiffs contend that "[b]eing homeless is an explicit element of the 'crime' of open lodging, both on the face of the ordinance and as-applied to Plaintiffs and other individuals experiencing homelessness in the City." (Dkt. 108, p. 23). Defendant disagrees and argues that whether or not a person is homeless only constitutes evidence indicating whether a person is using a space to "lodge," which is prohibited under the ordinance.

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. Amend. VIII. "A distinction exists between applying criminal laws to punish conduct, which is constitutionally permissible, and applying them to punish status, which is not." *Joel v. City of Orlando*, 232 F.3d 1353, 1361 (11th Cir. 2000) (citing *Robinson v. California*, 370 U.S. 660, 666 (1962) (state statute providing criminal punishment for addiction to narcotics violates the Eighth Amendment because it punishes the status of being addicted to narcotics rather than the commission of any act)).

The Court notes that courts examining similar ordinances consider the availability of homeless shelters when assessing whether the ordinance constitutes cruel and unusual punishment in violation of the Eighth Amendment. For example, the Eleventh Circuit in *Joel v. City of Orlando*, 232 F.3d 1353 (11th Cir. 2000) examined whether a similar ordinance violated the Eighth Amendment by punishing persons as a result of their status of being homeless. *Joel*, 232 F.3d at 1361. The Eleventh Circuit concluded that the ordinance at issue did not violate the Eighth Amendment because it targeted conduct and did not provide criminal punishment based on a person's status. *Id.* at 1362. That is because the unrefuted evidence in *Joel* established that the homeless shelter never reached

7

its maximum capacity and that the plaintiff had an opportunity to comply with the ordinance. *Id.* Notably, the City in *Joel* had a handbook to assist the police with enforcing the ordinance which noted that homeless persons should be advised of alternative shelter space available. *Id.* at 1356.

On the other hand, a more recent opinion from the Ninth Circuit in *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), reached the opposite conclusion. But, as the Ninth Circuit noted in *Martin*, the facts were distinguishable from those in *Joel*. Unlike *Joel* where the record evidence established that the shelters never reached capacity and that the plaintiff had access to the shelters and had the ability to comply with the ordinance, in *Martin*, the court concluded that there remained a genuine issue of material fact as to whether the shelters were available if plaintiffs were denied entry for a reason other than capacity. *Martin*, 920 F.3d at 610. Specifically, in *Martin* there was record evidence that the shelters refused entry to homeless individuals who exhausted the number of days allotted by the facilities, who identified with a different religious sect, who left the shelter before the permitted time, or who arrived at the shelter after a specific time of day. *Id*. The court concluded that, as long as there is a greater number of homeless individuals than the number of available beds in shelters, a municipality is prohibited from prosecuting homeless individuals from involuntarily sitting, lying, or sleeping in public. *Id.* at 617.

Here, the Court concludes that the failure to inquire about shelter availability is significant to the issue of whether the City's enforcement of the ordinance violates the Eighth Amendment. The availability of homeless shelters and the ability of homeless individuals to comply with the ordinance at the time they were arrested was critical to the

8

courts' analysis in both *Joel* and *Martin*. The Court notes that if the ordinance is only enforced after making an inquiry of the availability of shelter space, then it only punishes the individual's conduct for failing to comply with the ordinance. If no such inquiry is made and the individual is arrested for merely sleeping outside and identifying themselves as homeless, then the ordinance unlawfully punishes the individual based on their homeless status.

It is undisputed that whether there is a shelter available is not part of an officer's inquiry before making an arrest for violating the ordinance. (Dkt. 108-2). Unlike *Joel*, the ordinance here does not require the officer to inquire about the availability of shelter space prior to making an arrest for violating the ordinance.[1] In the absence of such inquiry, subsection c punishes an individual based on his or her status as a "homeless" individual. Accordingly, the Court enjoins the City from enforcing the ordinance unless such inquiry is made prior to arrest.

### C. Fourteenth Amendment –Void for Vagueness (Count Two)

Plaintiffs also contend that the ordinance is unconstitutional because it is void for vagueness and violates the Fourteenth Amendment. Specifically, Plaintiffs assert that the ordinance violates due process because it fails to give notice of the conduct that it punishes and it invites arbitrary enforcement. Plaintiffs claim that the definition of "lodge" in the

---

[1] In *Joel*, one of the enumerated indicia of camping identified in the City's handbook is that "the suspect is asleep and when awakened volunteers that he has no other place to live. Homeless persons should additionally be advised of alternative shelter available at the Coalition for the Homeless." *Joel*, 232 F.3d at 1356.

ordinance does not have a common or accepted meaning. Plaintiffs also take issue with the phrase "resting while awake" because it is inherently innocent conduct and a member of the public could not expect to be on notice that it is an element of a crime. In response, Defendant relies upon the Eleventh Circuit opinion in *Joel* finding that a similar ordinance was not unconstitutionally void for vagueness.

"The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Plaintiffs must first demonstrate that the ordinance has been applied to them in a vague manner. *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1271 (11th Cir. 2011). Section 42-10, as written, prohibits resting while awake or sleeping (1) inside, on, or near a tent or sleeping bag, or asleep atop or covered by materials (i.e. bedroll, cardboard, newspapers), or inside some form of temporary shelter, (2) near a campfire, or (3) when awoken relates that he or she is homeless. The ordinance further states that "merely sleeping" is not enough, and that there must be "one or more indicia of lodging" previously described in the ordinance.

Here, Plaintiffs were found sleeping using bags of belongings as a pillow, sleeping on a park bench with belongings, sleeping in a covered alcove, sleeping using clothing as a pillow, sleeping with blankets and sleeping bags, sleeping wrapped in blankets, sleeping with a backpack as a pillow, and sleeping on top of a pair of jeans. The Court concludes that Plaintiffs' conduct unambiguously falls within the description of "lodging" as described in the ordinance such that "a person of ordinary intelligence could reasonably

10

understand the conduct that is prohibited." *Joel*, 232 F.3d at 1360. The Court also notes that the officers must be permitted to exercise some level of discretion to assess what constitutes prohibited conduct under the ordinance. *Id.* Accordingly, the Court concludes that the ordinance is not impermissibly vague.

### D.  Fourteenth Amendment – Substantive Due Process (Count Three)

Plaintiffs claim that Section 42-10 violates their substantive due process rights as the City "is using its open lodging ordinance to arrest and incarcerate homeless individuals for sleeping or resting while awake *because they are also homeless*." (Dkt. 1, ¶ 324) (emphasis added). Plaintiffs contend that the City's ordinance prohibits sleeping or resting per se if the person is homeless. Plaintiffs further claim that the City enforces the ordinance even though shelter space is unavailable.

Defendant seeks summary judgment on Count III of Plaintiffs' Complaint because Plaintiffs have not established a legal cause of action for a violation of their substantive due process rights. In light of the Court's ruling with regard to Count I (enjoining the City from enforcing the ordinance prior to ascertaining the availability at the homeless shelters), the Court concludes that Defendant's motion for summary judgment on this claim should be denied.

### E.  Procedural Due Process – Trespass Policy (Count Four)

Plaintiffs assert that they have a constitutionally protected liberty interest to be in parks and other City property that are open to the public. Plaintiffs claim that the City's trespass policy violates procedural due process because the City's issuance of trespass

11

warnings unlawfully restricts them from returning to public parks. Plaintiffs also contend that the City does not have a formal process to challenge the trespass warning.

The Eleventh Circuit addressed similar challenges to a trespass ordinance in *Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011). While *Catron* was at the motion to dismiss stage, the Court concludes that the Eleventh Circuit's reasoning with respect to the due process challenges to the trespass ordinance is instructive here.

To pursue a procedural due process claim, Plaintiffs must show "(1) deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron*, 658 F.3d at 1266. While Plaintiffs have a constitutionally protected liberty interest to be in parks or other City property that are open to the public generally, that right is not absolute. *Sheets v. City of Punta Gorda, Fla.*, 415 F.Supp.3d 1115 (M.D. Fla. 2019); *Catron*, 658 F.3d at 1267 n.5. That right may be forfeited by trespass or violation of law. *Id.*; *Catron*, 658 F.3d at 1266.

The City claims that Plaintiffs forfeited their right to visit public parks when they violate state and local law. The Eleventh Circuit rejected this challenge and noted that the initial question "is not whether Plaintiffs forfeited their liberty interest by trespass or other violation of law, but what interest Plaintiffs allege they possessed (and then have been deprived of) in the first place." *Catron*, 658 F.3d at 1266. Here, all three Plaintiffs received trespass warnings for Tuscawilla Park and Ramsey and McArdle received trespass warnings for the Downtown Square. Tuscawilla Park and the Downtown Square are both City-owned public parks. The trespass warnings prohibit Plaintiffs from returning to those parks or they can be arrested for violating Florida Statute § 810.09. McArdle and

12

Cummings were arrested for trespass after warning for being in Tuscawilla Park. Because there is a constitutionally protected liberty interest to visit the City's parks and Plaintiffs have been deprived of access to those parks, Plaintiffs have satisfied the first element of their due process claim.

To determine whether the City's trespass policy satisfies the constitutional requirement of procedural due process, the Eleventh Circuit applies the *Mathews* balancing test. *Catron*, 658 F.3d at 1267. The *Mathews* test requires consideration of three factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and (3) the government's interest. Here, the first factor weighs in Plaintiffs' favor as they have a private interest in lawfully visiting the City's property that is open to the public. *See also Catron*, 658 F.3d at 1267.

With regard to the second factor, the Eleventh Circuit addressed similar concerns that Plaintiffs raise here and concluded that this factor weighed heavily in the plaintiff's favor. Here, Plaintiffs assert that the City provides no guidance for City officials to determine whether a person has actually committed a violation that permits issuance of a trespass warning. Plaintiffs also contend that the warnings do not contain notice of the availability of a process to challenge the warnings and that the City does not have a formal hearing process for Plaintiffs to challenge the issuance of the warnings. The Eleventh Circuit noted that "[g]iven that these warnings operate like some kind of injunction, this situation creates a substantial risk of erroneous deprivation of liberty." *Catron*, 658 F.3d at 1267.

Similar to the trespass warning in *Catron*, here the trespass warning provides no procedural means for a recipient to challenge it. Rather, the warning only provides that it is "valid until rescinded by issuing authority." (Dkt. 108-2, pp. 70-77). The trespass warning slips also do not contain the reasons for why the warnings were issued. The City does not have written criteria to guide police officers' or park rangers' discretion in deciding whether to issue trespass warnings.

The City does not address the third *Mathews'* factor (the government's interest) in its motion or in response to Plaintiffs' motion. Rather, the City's argument centers around Plaintiffs' forfeiting their right to visit public parks when they violate state or local law. Since the Eleventh Circuit has rejected this argument and addressed similar concerns like the ones Plaintiffs' raise here with regard to the City's trespass policy, the Court follows the reasoning in *Catron* and concludes that the City's trespass warnings violate due process. Accordingly, the City shall rescind Plaintiffs' trespass warnings and is enjoined from issuing trespass warnings without due process.

### F. Equal Protection (Count Five)

Plaintiffs allege that the City violated its equal protection rights because the ordinance discriminates against homeless persons on its face and the City's enforcement of the ordinance disparately impacts homeless persons. Defendant seeks summary judgment on Plaintiffs' equal protection claim. As previously discussed with regard to Count One, the Court concluded that if no inquiry of the availability of shelter space is made prior to an individual's arrest for violating the ordinance, then the ordinance unlawfully punishes an individual based on their homeless status. Consistent with the

Court's ruling on Plaintiffs' Eighth Amendment claim, the Court concludes that Defendant's motion for summary judgment should be denied on this claim.

### G. Article I, Section IX, Florida Constitution (Count Six)

Defendant's request for summary judgment on this claim only pertains to the City's trespass policy. Defendant claims that its policy of issuing trespass warnings for a public park does not restrict intrastate travel because the warnings only extend to the boundaries of the public park and does not extend to the sidewalks and roads abutting the parks.

In response, Plaintiffs claim that Defendant's enforcement of the ordinance against homeless persons when they have no place to sleep or rest penalizes their freedom of movement. Plaintiffs rely on *Pottinger v. City of Miami*, 810 F.Supp. 1551, 1580-81 (S.D. Fla. 1992) in support of their position. In *Pottinger*, the court concluded that "preventing homeless individuals from performing activities that are 'necessities of life,' such as sleeping, in any public place when they have nowhere else to go effectively penalizes migration." *Pottinger*, 810 F.Supp. at 1580.

Count Six in Plaintiffs' Complaint pertains to the open lodging ordinance, the City's trespass policy, and the City's "broken windows" policing policy.[2] (Dkt. 1, pp. 63-65). The Court notes that neither Plaintiffs nor Defendant fully addressed this claim in their briefs. Defendant only addressed the trespass policy in its motion for summary judgment. Plaintiffs do not seek summary judgment on this claim and only addressed the City's open

---

[2] Under the "brokens windows" policing policy, OPD officers actively identify and arrest homeless individuals for municipal ordinance violations.

15

lodging ordinance in response to the City's motion for summary judgment on this claim. The Court declines to grant summary judgment on this claim.

## II.     *Daubert* Motions

Defendant moves the Court to exclude the testimony of Barbara Poppe, Robert R. Pussins, and Dr. Jonathan Grant Harrell[3] because they will not assist the trier of fact. Plaintiffs moved to exclude Defendant's expert testimony of Ocala Police Chief Gregory Graham because his opinions are not based on facts or a reliable methodology, are not relevant, and are not helpful to the trier of fact.   In light of the summary judgment analysis, the Court concludes that resolution of the *Daubert* motions are not necessary and denies them as moot.

It is therefore ORDERED AND ADJUDGED that:

1. The City of Ocala's *Daubert* Motion (Dkt. 70) is denied as moot.

2. Plaintiffs' *Daubert* Motion (Dkt. 106) is denied as moot.

3. The City of Ocala's Dispositive Motion for Final Summary Judgment (Dkt. 107) is denied.

4. Plaintiffs' Motion for Summary Judgment (Dkt. 108) is granted in part and denied in part.

    a. The City of Ocala is enjoined from arresting, citing, or otherwise enforcing the open lodging ordinance against someone identifying as

---

[3] Plaintiffs have replaced Dr. Harrell with Dr. Armen Henderson.   Dr. Henderson has adopted Dr. Harrell's expert opinions as his own.

16

homeless, codified at City Code § 42-10, prior to inquiring about the availability of shelter space.

b. The City of Ocala shall rescind Plaintiffs' trespass warnings and is enjoined from issuing future trespass warnings without due process of law consistent with this Order.

5. The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida, this 8th day of February, 2021.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record